UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

GAINESVILLE DIVISION

_____
                                          )
**LYSNER VALCIN,**                        )
**JEAN ROBERT SEJOUR,**                   )
**RICHERSON SEJOUR,**                     )
**CLAUDE SEJOUR,**                        )
**MAX ETIENNE,**                          )
**EMMANUEL MONDESIR,**                    )
**ELIN MEDAR,**                           )
**RODELIN DEMPAIRE,**                     )
**JEAN FRANCOIS CAJOUR,**                 )
**EDIL EXAINVIL,**                        )
**AROLD PIERRE,**                         )
**JODANY SEJOUR,**                        )
**MARIE CLAUDETTE MILIEN,**               )
**JUSLAINE AUGUSTE,**                     )
**ODETTE ANTOINE,**                       )
**GLADYS GEFFRARD,**                      )
**MANOUCHE SEJOUR,**                      )
**DERDINE RIODIN,**                       )
**JOCELYNE PIERRE,**                      )
**PLENITA LAURANT,**                      )
**MELIANNA LAZARRE,**                     )
**ROMELDINE PIERRE,**                     )
**WISLAIN WILSON ORELUS,**                )
**JUDES ST. HILAIRE,**                    )
**JIMMY JEAN-LOUIS,**                     )
**GESNER ELTA DUVERNEY,**                 )
**ST. JUSTE SAINTAMAND ORELUS,**          )
**MIKELSON LACOUR,**                      )
**LALNNE GUERRIER,**                      )
**NEGUS ALMONOR,**                        )
**OLIBRICE ORELUS,**                      )
**JUMMY MONCOEUR,**                       )
 **RONALD JEAN,**                         )
**BRUNET MARTIN,**                        )
**MODELINE SEJOUR,**                      )
**PAULNISE DOLCE,**                       )

SLANDLEY DOLCE,                    )
LOGENE PIERRE,                     )
THERESE GUERRIER,                  )
DUCASSE WALDEZ and                 )
MARC AUGUSTE,                      )
                                   )
            Plaintiffs,            )       Civil Action
                                   )
v.                                 )       No. 1:10-cv-000096-SPM-GRJ
                                   )
STEVEN DAVIS FARMS, LLC and        )
STEVEN DAVIS,                      )
                                   )
            Defendants.            )
_____)
                                   )
DELINOIR FANETTE,                  )
YVES AUGUSTIN,                     )
FRANCILLON BADIO,                  )
MARIE MARTHE BENECHE,              )
JUSLAINE CHERELUS,                 )
DALESTIN CHERENFANT,               )       Consolidated with:
SIFORT CONTREKER,                  )
PIERRE ANES DARVILMAR,             )
MARIE I. DESRUISSEAU,              )
ST. GELUS DUFRESNE,                )
MARIE YOLENE EXUME,                )
MARIE ALMONOR FAUSTIN,             )
DEVILMA FLORVIL,                   )
ANDRE JEAN-BAPTISTE,               )
ZILLIANNE JOLY,                    )
MERANCIA JOSEPH,                   )
ROSIE JOSEPH,                      )
ANITE LABROUSSE,                   )
CLERVIS LOUIS,                     )
EDEL JOSEPH MAYARD,                )
ANDRELISE MEZILUS,                 )
DECION NELSON,                     )
ADDLY PETITFRERE,                  )
INOCIO ANDRE SIMEON,               )
PIERRE STIMABLE,                   )
ICLERCIA ST. JUSTE,                )
MIMOSE VINCENT,                    )

-2-

EPFANIE SAINTELUS VITAL and )
DUKENS ZEPHIR, )
)
      Plaintiffs, )
)     Civil action
vs. )     No. 1:10-cv-136-SPM-AK
)
STEVEN DAVIS FARMS, LLC )
and STEVEN M. DAVIS, )
)
      Defendants. )
_____ )

## THIRD AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, INJUNCTIVE RELIEF, COSTS OF LITIGATION AND ATTORNEY'S FEE

### PRELIMINARY STATEMENT

1.    This is an action by 70 migrant farmworkers who were employed on the Lacrosse, Florida operations of Defendants Steven Davis Farms, LLC and Steven M. Davis to cultivate, harvest and pack vegetables at various points between 2007 through 2010, inclusive.  The Plaintiffs bring this action to secure and vindicate rights afforded them by the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§1801, *et seq.* ("AWPA"), the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* ("FLSA"), the minimum wage provisions of the Florida Constitution, Article X, Section 24, and the common law of contracts.

2.    The Plaintiffs consist of two groups of claimants.  Twenty-nine of the Plaintiffs were recruited from south Florida and other areas for work at the Defendants' Alachua County farm and packinghouse.  The remaining 41 Plaintiffs are Haitian nationals who were admitted to the United States as guest workers pursuant to the Immigration and Nationality Act for employment

-3-

on the Defendants' operations during the 2008 harvest season.

3.   The Plaintiffs claim that throughout the period they were employed on the Defendants' operations in 2007, 2008, 2009 and/or 2010,  Steven Davis Farms, LLC and Steven M. Davis failed to pay minimum wages as required by the FLSA and the minimum wage provisions of the Florida Constitution.  Throughout the period of their employment by the Defendants, the 29 domestic worker Plaintiffs were denied the benefits of many of the substantive provisions of the AWPA.  The 41 guest worker Plaintiffs contend that the Defendants breached the terms of their employment contracts in numerous respects.

4.   The Plaintiffs seek money damages, declaratory relief and injunctive relief to redress these violations of law.

## JURISDICTION

5.   Jurisdiction is conferred upon this Court by 29 U.S.C. §1854(a), this action arising under the AWPA; by 29 U.S.C. §216(b), this action arising under the FLSA; by 28 U.S.C. §1331, this action arising under the laws of the United States; and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce; and by 28 U.S.C. §1367, providing supplemental jurisdiction over the state law claims.

6.    This Court has supplemental jurisdiction over the claims arising under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

7.   The Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

**VENUE**

8.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the Defendants reside in this district and the events or omissions giving rise to the claim occurred in the district.

**PARTIES**

9.  Plaintiffs Delinoir Fanette, Yves Augustin, Francillon Badio, Marie Marthe Beneche, Juslaine Cherelus, Dalestin Cherenfant, Sifort Contreker, Pierre Ans Darvilmar, Marie I. Desruisseau, St. Gelus Dufresne, Marie Yolene Exume, Marie Almonor Faustin, Devilma Florvil, Andre Jean-Baptiste, Zillianne Joly, Merancia Joseph, Rosie Joseph, Anite Labrousse, Clervis Louis,  Edel Joseph Mayard, Andrelise Mezilus, Decion Nelson, Addly Petitfrere, Inocio Andre Simeon, Pierre Stimable, Iclercia St. Juste, Mimose Vincent, Epfanie Saintelus Vital and Dukens Zephir ("domestic worker Plaintiffs") are adult migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A) in that they were employed in agricultural employment of a seasonal nature on the Defendants' north Florida operations and were required to be absent overnight from their permanent places of residence in Miami-Dade or Broward Counties, Florida.  At all times relevant to this action, the domestic worker Plaintiffs were engaged on the Defendants' operations in the production of beans and other crops for sale in interstate commerce.   The domestic worker Plaintiffs are fluent only in the Haitian Creole language.

10.   Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine,

Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna

Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner

Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus

Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin, Modeline Sejour,

Paulnise Dolce, Slandley Dolce, Logene Pierre, Therese Guerrier, Ducasse Waldex and Marc

Auguste ("H-2A worker Plaintiffs") are citizens of Haiti each of whom was admitted to the

United States  during 2008 as an agricultural guest worker pursuant to 8 U.S.C.

§1101(a)(15)(H)(ii)(a) for temporary employment harvesting and packing the Defendants'

vegetable crops.  At all times relevant to this action, the H-2A worker Plaintiffs were engaged on

the Defendants' operations in the production of beans and other crops for sale in interstate

commerce.

     11.  Defendant Steven Davis Farms, LLC is a closely-held Florida corporation that

maintains its headquarters in Lacrosse, Alachua County, Florida.  At all times relevant to this

action, Defendant Steven Davis Farms, LLC  owned or operated a farm in the Alachua County

area and produced vegetables for sale in interstate commerce.  At all times relevant to this action,

Defendant Steven Davis Farms, LLC was an agricultural employer of the domestic worker

Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1802(2), in that it owned or operated a

farm and employed the domestic worker Plaintiffs and other migrant or seasonal agricultural

workers.  At all times relevant to this action, Defendant Steven Davis Farms, LLC employed the

both the domestic worker and H-2A worker Plaintiffs within the meaning of the FLSA, 29

U.S.C. §203(d) in that it controlled the workers' employment, directly and indirectly supervised

the performance of their job duties and established their rates of pay and job terms.   The

Plaintiffs' employment occurred on the Defendant's property and was an integral part of the Defendant's vegetable business. At all times relevant to this action, Defendant Steven Davis Farms, LLC was an employer of the H-2A Plaintiffs within the meaning of the regulations governing the H-2A temporary agricultural worker program, 20 C.F.R. §655.100(b) (2008).

12. Defendant Steven M. Davis is a resident of Alachua County, Florida. He is the chief operating officer and owner of Defendant Steven M. Davis Farms, LLC. From 2007 through 2010, Defendant Steven M. Davis had day-to-day operational control of Defendant Steven Davis Farms, LLC and had full power to act on behalf of Steven Davis Farms LLC with respect to its employment of the Plaintiffs and other harvest and packinghouse workers. At all times relevant to this action, Defendant Steven M. Davis owned or operated a farm near Lacrosse, Florida and produced vegetables for sale in interstate commerce. At all times relevant to this action, Defendant Steven M. Davis was an agricultural employer of the domestic worker Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1802(2), in that he owned or operated a farm and employed the domestic worker Plaintiffs and other migrant or seasonal agricultural workers. At all times relevant to this action, Defendant Steven M. Davis employed both the domestic worker and H-2A worker Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(d) in that he controlled the workers' employment, directly and indirectly supervised the performance of their job duties, established their rates of pay and job terms. The Plaintiffs' employment occurred on Davis' property and was an integral part of his vegetable business. At all times relevant to this action, Defendant Steven Davis was an employer of the H-2A Plaintiffs within the meaning of the regulations governing the H-2A temporary agricultural worker program, 20 C.F.R. §655.100(b) (2008).

## COUNT I

**(Migrant and Seasonal Agricultural Worker Protection Act)**
**(2010 north Florida vegetable season)**

13.  This count sets forth a claim by domestic worker Plaintiffs Juslaine Cherelus, Dalestin Cherenfant, Marie Almonor Faustin, Devilma Florvil, Rosie Joseph, Addly Petitfrere, Pierre Stimable, Mimose Vincent and Dukens Zephir ("the 2010 Plaintiffs") for damages, injunctive relief and declaratory relief with respect to the Defendants' violations of the AWPA and its attendant regulations during the 2010 vegetable season on the Defendants' operations in and near Lacrosse, Florida.

14.  In or about April, 2010, the Defendants recruited the 2010 Plaintiffs for employment on the Defendants' operations during the 2010 north Florida vegetable season, extending from approximately May through December, 2010.  This recruitment was conducted or supervised by Cabioch Bontemps, a full-time employee of the Defendants.

15.  The Defendants failed to provide the 2010 Plaintiffs at the time of their recruitment with a written statement of the terms and conditions of employment in a language in which the workers were fluent, as required by the AWPA, 29 U.S.C. §§1821(a) and (g), and its attendant regulations, 29 C.F.R. §§500.75(b) and 500.78.

16.  At various points in the 2010 north Florida vegetable season, the Defendants employed the 2010 Plaintiffs for work planting, cultivating, harvesting, grading and packing vegetable crops on the Defendants' farm near Lacrosse, Florida.

17.  Throughout the period of their employment on the Defendants' farm during the 2010

north Florida vegetable season, the 2010 Plaintiffs were housed in facilities owned or controlled

by the Defendants.   At all times relevant to this count, these housing facilities were controlled

and provided to the 2010 Plaintiffs by the Defendants, within the meaning of the AWPA, 29

U.S.C. §§1821(c) and 1823(a), and its attendant regulations, 29 C.F.R. §§500.75(f) and

500.130(c).

18.   In violation of the AWPA, 29 U.S.C. §1823(b)(1), and its attendant regulations, 29

C.F.R. §500.135(a), the Defendants permitted the 2010 Plaintiffs to occupy the housing facilities

described in Paragraph 17 without these facilities having first been certified by a State or local

health authority or other appropriate agency as meeting applicable safety and health standards

relating to migrant labor housing.

19.   In violation of the AWPA, 29 U.S.C. §1823(a), and its attendant regulations, 29

C.F.R. §500.130, the Defendants failed to ensure that the accommodations provided to the 2010

Plaintiffs as described in Paragraph 17 complied with substantive Federal and State safety and

health standards applicable to the housing.  Among other things, the facilities were overcrowded,

lacked required cooking, refrigeration and food storage equipment, were not equipped with heat

and did not include comfortable beds for each occupant.

20.   The Defendants failed to post in a conspicuous place or to present to the 2010

Plaintiffs a written statement of the terms and conditions of occupancy at the facilities described

in Paragraph 17, as required by the AWPA, 29 U.S.C. §§1821(c) and (g), and its implementing

regulations, 29 C.F.R. §§500.75(f) and 500.78.

21   Throughout the 2010 north Florida vegetable season, the Defendants transported or

caused to be transported the 2010 Plaintiffs on a daily basis in various vehicles.  The Defendants

failed to have an insurance policy or liability bond insuring them in the requisite amounts against liability for damage to persons and property arising from the transportation of the 2010 Plaintiffs in these vehicles, thereby violating the AWPA, 29 U.S.C. §1841(b)(1)(C), and its attendant regulations, 29 C.F.R. §§500.120 and 500.121.

22. The Defendants failed to make, keep and preserve records as required by the AWPA, 29 U.S.C. §1821(d)(1), and its attendant regulations, 29 C.F.R. §500.80(a), regarding the work of the 2010 Plaintiffs during the 2010 north Florida vegetable season. Among other things, no records were maintained showing the hours worked by the 2010 Plaintiffs while employed harvesting vegetables on a piece-rate basis.

23. In violation of the AWPA, 29 U.S.C. §1821(d)(2), and its attendant regulations, 29 C.F.R. §500.80(d), the Defendants failed to provide to the 2010 Plaintiffs at each pay day during the 2010 north Florida vegetable season a written statement containing the data required to be disclosed under the statute and its implementing regulations. The 2010 Plaintiffs either received no wage statements whatsoever or were provided with pay envelopes which failed to show the employer's name and address and the number of hours worked on piece-rate activities.

24. Throughout the period they employed the 2010 Plaintiffs during the 2010 north Florida vegetable season, the Defendants failed to provide field toilets, handwashing facilities and drinking water as required by federal and state law, thereby violating the AWPA, 29 U.S.C. §1822(c), and its implementing regulations, 29 C.F.R. §500.72.

25. The 2010 Plaintiffs were paid on a piece-rate basis for their work harvesting vegetables on the Defendants' operations during the 2010 north Florida vegetable season. The 2010 Plaintiffs' weekly piece-rate harvesting earnings totaled less than the applicable federal and

state minimum wages. For harvesting work, the Defendants only compensated the 2010

Plaintiffs for their piece-rate earnings. The Defendants failed to supplement the 2010 Plaintiffs'

piece-rate earnings so as to raise their work week wages to a rate equal to or exceeding the

applicable state and federal minimum wages.

28. For much of the packing house work during the 2010 north Florida vegetable harvest,

the Defendants compensated the 2010 Plaintiffs at a rate of $7.00 per hour, less than the

applicable minimum wage under the Fair Labor Standards Act and the Florida Constitution.

27. The Defendants failed to properly credit the 2010 Plaintiffs with all compensable

hours worked. On occasion, the 2010 Plaintiffs were required to sit idle at the jobsite at the

commencement of the day for prolonged periods of time, waiting for the dew to dry on the beans

before beginning to pick, or at the end of the workday, waiting for boxes of beans to be weighed

and for their picking tokens to be counted. Although this time was properly compensable under

the Fair Labor Standards Act, the Defendants failed to credit the 2010 Plaintiffs with this waiting

time as part of their respective compensable hours worked.

28. The Defendants unlawfully withheld charges from the wages of the 2010 Plaintiffs

for the housing accommodations described in Paragraph 17.

29. The Defendants failed to report to the Social Security Administration the earnings of

the 2010 Plaintiffs on the Defendants' operations during the 2010 north Florida vegetable

harvest. The Defendants also failed to pay Social Security or unemployment compensation taxes

pursuant to the Federal Insurance Contributions Act with respect to the earnings of the 2010

Plaintiffs for labor performed on the Defendants' operations during the 2010 north Florida

vegetable harvest.

30.  By their actions described in Paragraphs 25, 26, 27, 28 and 29, the Defendants failed to pay the 2010 Plaintiffs their wages when due for work performed on the Defendants' operations during the 2010 vegetable harvest, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81.

31.  The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

32.  As a result of the Defendants' violations of the AWPA and its attendant regulations as set forth in this count, the 2010 Plaintiffs have suffered damages.

## COUNT II

**(Migrant and Seasonal Agricultural Worker Protection Act)**
**(2009 north Florida vegetable season)**

33.  This count sets forth a claim by domestic worker Plaintiffs Delinoir Fanette,

Francillon Badio, Marie Marthe Beneche, Juslaine Cherelus, Dalestin Cherenfant, Sifort

Contreker, Marie I. Desruisseau, Marie Yolene Exume, Marie Almonor Faustin, Devilma Florvil,

Andre Jean-Baptiste, Anite Labrousse, Clervis Louis, Edel Joseph Mayard, Andrelise Mezilus,

Decion Nelson, Pierre Stimable, Iclercia St. Juste, Mimose Vincent and Dukens Zephir ("the

2009 Plaintiffs") for damages, injunctive relief and declaratory relief with respect to the

Defendants' violations of the AWPA and its attendant regulations during the 2009 vegetable

season on the Defendants' operations in and near Lacrosse, Florida.

34.  In or about April, 2009, the Defendants recruited the 2009 Plaintiffs for employment

on the Defendants' operations during the 2009 north Florida vegetable season, extending from

approximately May through November, 2009.  This recruitment was conducted or supervised by

Cabioch Bontemps, a full-time employee of the Defendants.

35.  The Defendants failed to provide the 2009 Plaintiffs at the time of their recruitment

with a written statement of the terms and conditions of employment in a language in which the

workers were fluent, as required by the AWPA, 29 U.S.C. §§1821(a) and (g), and its attendant

regulations, 29 C.F.R. §§500.75(b) and 500.78.

36.  At various points in the 2009 north Florida vegetable season, the Defendants

employed the 2009 Plaintiffs for work planting, cultivating, harvesting, grading and packing

-13-

vegetable crops on the Defendants' farm near Lacrosse, Florida.

37.   Throughout the period of their employment on the Defendants' farm during the 2009 north Florida vegetable season, the 2009 Plaintiffs were housed in facilities owned or controlled by the Defendants.   At all times relevant to this count, these housing facilities were controlled and provided to the 2009 Plaintiffs by the Defendants, within the meaning of the AWPA, 29 U.S.C. §§1821(c) and 1823(a), and its attendant regulations, 29 C.F.R. §§500.75(f) and 500.130(c).

38.   In violation of the AWPA, 29 U.S.C. §1823(b)(1), and its attendant regulations, 29 C.F.R. §500.135(a), the Defendants permitted the 2009 Plaintiffs to occupy the housing facilities described in Paragraph 37 without these facilities having first been certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards relating to migrant labor housing.

39.   In violation of the AWPA, 29 U.S.C. §1823(a), and its attendant regulations, 29 C.F.R. §500.130, the Defendants failed to ensure that the accommodations provided to the 2009 Plaintiffs as described in Paragraph 37 complied with substantive Federal and State safety and health standards applicable to the housing.  Among other things, the facilities were overcrowded, lacked required cooking, refrigeration and food storage equipment, were not equipped with heat and did not include comfortable beds for each occupant.

40.   The Defendants failed to post in a conspicuous place or to present to the 2009 Plaintiffs a written statement of the terms and conditions of occupancy at the facilities described in Paragraph 37, as required by the AWPA, 29 U.S.C. §§1821(c) and (g), and its implementing regulations, 29 C.F.R. §§500.75(f) and 500.78.

-14-

41. Throughout the 2009 north Florida vegetable season, the Defendants transported or caused to be transported the 2009 Plaintiffs on a daily basis in various vehicles. The Defendants failed to have an insurance policy or liability bond insuring them in the requisite amounts against liability for damage to persons and property arising from the transportation of the 2009 Plaintiffs in these vehicles, thereby violating the AWPA, 29 U.S.C. §1841(b)(1)(C), and its attendant regulations, 29 C.F.R. §§500.120 and 500.121.

42. The Defendants failed to make, keep and preserve records as required by the AWPA, 29 U.S.C. §1821(d)(1), and its attendant regulations, 29 C.F.R. §500.80(a), regarding the work of the 2009 Plaintiffs during the 2009 north Florida vegetable season. Among other things, no records were maintained showing the hours worked by the 2009 Plaintiffs while employed harvesting vegetables on a piece-rate basis. No records whatsoever were kept and maintained on the labor of Plaintiffs Marie Marthe Beneche, Marie Yolene Exume, Decion Nelson and Iclercia St. Juste.

43. In violation of the AWPA, 29 U.S.C. §1821(d)(2), and its attendant regulations, 29 C.F.R. §500.80(d), the Defendants failed to provide to the 2009 Plaintiffs at each pay day during the 2009 north Florida vegetable season a written statement containing the data required to be disclosed under the statute and its implementing regulations. The 2009 Plaintiffs either received no wage statements whatsoever or were provided with pay envelopes which failed to show the employer's name and address and the number of hours worked on piece-rate activities.

44. Throughout the period they employed the 2009 Plaintiffs during the 2009 north Florida vegetable season, the Defendants failed to provide field toilets, handwashing facilities and drinking water as required by federal and state law, thereby violating the AWPA, 29 U.S.C.

§1822(c), and its implementing regulations, 29 C.F.R. §500.72.

45. The 2009 Plaintiffs were paid on a piece-rate basis for their work harvesting vegetables on the Defendants' operations during the 2009 north Florida vegetable season. The 2009 Plaintiffs' weekly piece-rate harvesting earnings totaled less than the applicable federal and state minimum wages. The Defendants only compensated the 2009 Plaintiffs for their piece-rate earnings. The Defendants failed to supplement the 2009 Plaintiffs' piece-rate earnings so as to raise their work week wages to a rate equal to or exceeding the applicable state and federal minimum wages.

46. The Defendants failed to properly credit the 2009 Plaintiffs with all compensable hours worked. On occasion, the 2009 Plaintiffs were required to sit idle at the jobsite at the commencement of the day for prolonged periods of time, waiting for the dew to dry on the beans before beginning to pick, or at the end of the workday, waiting for boxes of beans to be weighed and for their picking tokens to be counted. Although this time was properly compensable under the Fair Labor Standards Act, the Defendants failed to credit the 2009 Plaintiffs with this waiting time as part of their respective compensable hours worked.

47. The Defendants unlawfully withheld charges from the wages of the 2009 Plaintiffs for the housing accommodations described in Paragraph 37.

48. The Defendants failed to report to the Social Security Administration the earnings of the 2009 Plaintiffs on the Defendants' operations during the 2009 north Florida vegetable harvest. The Defendants also failed to pay Social Security taxes pursuant to the Federal Insurance Contributions Act with respect to the earnings of the 2009 Plaintiffs for labor performed on the Defendants' operations during the 2009 north Florida vegetable harvest.

49.  By their actions described in Paragraphs 45, 46, 47 and 48, the Defendants failed to pay the 2009 Plaintiffs their wages when due for work performed on the Defendants' operations during the 2009 vegetable harvest, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81.

50.  The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

51.  As a result of the Defendants' violations of the AWPA and its attendant regulations as set forth in this count, the 2009 Plaintiffs have suffered damages.

## COUNT III

**(Breach of employment contract)**
**(2008 north Florida vegetable season)**

_____52.  This  count sets forth a claim by the H-2A worker Plaintiffs against the Defendants

for their breach of their employment contracts with these agricultural guest workers.

53.   An agricultural employer in the United States may import aliens to perform labor of

a temporary nature if the United States Department of Labor certifies that (1) there are

insufficient available workers within the United States to perform the job, and (2) the

employment of aliens will not adversely affect the wages and working conditions of similarly-

situated U.S. workers.  8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1188 (a)(1).  Aliens admitted in this

fashion are commonly referred to as "H-2A workers."

55.   Agricultural employers seeking the admission of H-2A workers must first file a

temporary labor certification application with the U.S. Department of Labor.  20 C.F.R.

§§655.101(a)(1) and (b)(1) (2008).  This application must include a job offer, commonly referred

to as a "clearance order" or "job order," complying with applicable regulations, which is used in

the recruitment of both U.S. and H-2A workers.  20 C.F.R. §655.101(b)(1) (2008).  These

regulations establish the minimum benefits, wages, and working conditions that must be offered

in order to avoid adversely affecting similarly-situated U.S. workers.  20 C.F.R. §§655.0(a)(2),

655.102(b), and 655.103 (2008).  Among these terms are the following:

      A.      Provision of housing without charge and in compliance with Department of Labor

                Occupational Safety and Health Administration standards.  20 C.F.R.

§655.102(b)(1) (2008);

B.      Provision of three meals per day at a limited charge or providing workers with

        facilities to prepare their own meals.  20 C.F.R. §655.102(b)(4) (2008);

C.      Provision of or payment for the transportation from the worker's home and

        subsistence *en route* for those individuals who completed the first 50 percent of

        the contract period.  20 C.F.R. §655.102(b)(5)(i) (2008);

D.      Guarantee of the opportunity to work at least 3/4 of the hours during the work

        period described in the job offer and payment for any shortfall from the guarantee.

        20 C.F.R. §655,192(b)(6)(i) (2008);

E.      Payment to all workers of at least the applicable adverse effect wage rate for every

        hour or portion thereof worked during a pay period.  20 C.F.R. §§655.102(b)(9)(i)

        and (ii) (2008).  The applicable adverse effect wage rate for 2008 north Florida

        vegetable season was $8.82 per hour;

F.      Preparation and maintenance of accurate and adequate records with respect to the

        workers' earnings and all deductions from wages and the reasons therefor.  20

        C.F.R. §655.102(b)(7)(i) (2008);

G.      Issuance to worker each payday of an hours and earnings statement, listing the

        worker's earnings, hours worked, units produced on a piece-rate basis and

        itemizing all deductions from wages.  20 C.F.R. §655.102(b)(8) (2008);

H.      Provision of a copy of the work contract no later than the starting date of work.

        20 C.F.R. §655.102(b)(14) (2008); and

H.      Compliance with federal and state minimum wage laws.  20 C.F.R.

§653.501(d)(4) and 20 C.F.R. §655.103(b) (2008).

56.     Because of their seasonal need for an influx of workers to harvest and pack their

vegetable crops, the Defendants engaged the services of various farm labor contractors to recruit,

hire and furnish migrant workers.  For a number of years, the Defendants hired Eugene Regis, a

farm labor contractor based in Miami-Dade County to supply labor.  By 2006, Regis was assisted

in furnishing labor to the Defendants' farm by his stepson, Cabioch Bontemps.  By 2007,

Bontemps assumed primary responsibility for overseeing the recruitment, hiring and furnishing

of migrant workers to supplement the Defendants' local workforce.  Bontemps in turn utilized

various subcontractors to assist him in recruiting and hiring workers for the Defendants'

operations.

57.     Anticipating a substantial shortage of domestic workers for the 2008 harvest season,

the Defendants decided to request the admission of H-2A workers.  In furtherance of this effort,

the Defendants contracted with Carline Ceneus, Bontemps' sister and Regis' stepdaughter, Willie

Paul Edouard and Pierre Avesca to supply guest workers from Haiti to assist in harvesting and

packing the Defendants' crops.

58.     In furtherance of her contract with the Defendants as described in Paragraph 57,

Carline Ceneus submitted to the United States Department of Labor an application for temporary

labor certification.  This temporary labor certification application was filed through Ceneus'

wholly-owned corporation, Carline's Hot Pickers, Inc. and requested the admission of 50

workers from Haiti for employment on the Defendants' operations.

59.     As part of her temporary labor certification as described in Paragraph 58, Ceneus

included a job offer, also known as a clearance order, for use in the recruitment of U.S. and

foreign workers.   The clearance order stated that the employment would extend from May 4

through November 28, 2008, with an anticipated 40 hours of work per week.  In accordance with

20 C.F.R. §655.102(b)(14), this clearance order served as the employment contract for the

workers hired to fill its manpower requirements.  A copy of the clearance order is attached as

Exhibit A.

 60.  In furtherance of his contract with the Defendants as described in Paragraph 57,

Willie Paul Edouard submitted to the United States Department of Labor an application for

temporary labor certification requesting the admission of workers from Haiti for employment on

the Defendants' operations.

 61.  As part of his temporary labor certification as described in Paragraph 60, Edouard

included a job offer, also known as a clearance order, for use in the recruitment of U.S. and

foreign workers.  In accordance with 20 C.F.R. §655.102(b)(14), this clearance order served as

the employment contract for the workers hired to fill its manpower requirements.  A copy of the

clearance order is attached as Exhibit B.

 62.  In furtherance of his contract with the Defendants as described in Paragraph 57,

Pierre Avesca submitted to the United States Department of Labor an application for temporary

labor certification requesting the admission of workers from Haiti for employment on the

Defendants' operations.

 63.  As part of his temporary labor certification as described in Paragraph 62, Avesca

included a job offer, also known as a clearance order, for use in the recruitment of U.S. and

foreign workers.  In accordance with 20 C.F.R. §655.102(b)(14), this clearance order served as

the employment contract for the workers hired to fill its manpower requirements.  A copy of the

clearance order is attached as Exhibit C.

64. The United States Department of Labor approved the temporary labor certification applications submitted by Ceneus, Edouard and Avesca and forwarded them to the United States Consulate in Port-au-Prince, Haiti for processing of individual H-2A visas to workers selected to fill the specified job openings.

65. Ceneus traveled to Haiti to recruit workers to fill the manpower requirements of her clearance order. Between April and October, 2008, in her capacity as the Defendants' hiring agent, Ceneus recruited a number of Haitian nationals to work on the Defendants' operations pursuant to her temporary labor certification, including H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant and Melianna Lazarre.

66. Edouard, accompanied by Carline Ceneus, traveled to Haiti to recruit workers to fill the manpower requirements of his clearance order . Between September and November, 2008, in his capacity as the Defendants' hiring agent, Edouard and Ceneus recruited a number of Haitian nationals to work on the Defendants' operations pursuant to Edouard's temporary labor certification, including H-2A worker Plaintiffs Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin, Paulnise Dolce, Slandley Dolce, Logene Pierre, Therese Guerrier, Ducasse Waldez and Marc Auguste.

67. Avesca traveled to Haiti to recruit workers to fill the manpower requirements of his clearance order . Between September and November, 2008, in his capacity as the Defendants' hiring agent, Avesca recruited a number of Haitian nationals to work on the Defendants' operations pursuant to his temporary labor certification, including H-2A worker Plaintiff Modeline Sejour.

68. The Defendants ratified the recruitment and hiring actions of Ceneus, Edouard and Avesca as described in Paragraphs 65, 66 and 67 by employing the H-2A worker Plaintiffs on its operations during the 2008 north Florida vegetable harvest season.

69. Each of the H-2A worker Plaintiffs paid a hiring and recruitment fee to be selected to receive an H-2A visa fill one of the certified positions described in the clearance orders submitted by Ceneus, Edouard or Avesca. These fees ranged from $3,000 to $4,500 and were paid to Ceneus, Edouard or Avesca, depending on which of these individuals recruited the worker. In order to obtain these funds, many of the H-2A worker Plaintiffs mortgaged their homes and/or took out loans at usurious rates of up to 100 percent. Some of the H-2A worker Plaintiffs were told that these fees would be used for travel expenses, visa costs and food and lodging expenses in Florida, while other H-2A worker Plaintiffs received no explanation as to the use of these hiring and recruitment fees.   The H-2A worker Plaintiffs were not provided with any receipts for payment of these hiring and recruitment fees.

70. While in Haiti, Ceneus, Edouard and Avesca, acting as the Defendants' hiring agents, advised the H-2A Plaintiffs that they were being hired under the terms of the respective clearance orders. Based on the assurances by Ceneus, Edouard or Avesca, each of the H-2A worker Plaintiffs traveled at his or her own expense to the Port-au-Prince to obtain passports and to

apply at the American Consulate for H-2A visas to permit them to enter the United States for

employment on the Defendants' operations.   The H-2A worker Plaintiffs incurred lodging, meal

and other expenses while waiting in Port-au-Prince for their H-2A visa applications to be

processed, with the expectation that they would be reimbursed for these expenses.

71.   The H-2A worker Plaintiffs were never reimbursed for any of their pre-employment

expenses related to their employment on the Defendants' operations, including the hiring and

recruitment fees and the expenses incurred in Port-au-Prince as set out in Paragraph 70.

72.   After being issued their H-2A visas, the H-2A worker Plaintiffs traveled to Florida

and were admitted the United States at Miami.

73.   Upon their arrival in the United States, most of the H-2A worker Plaintiffs were

transported from Miami to Alachua County to commence work on the Defendants' operations.

However, H-2A worker Plaintiffs  Paulnise Dolce, Slandley Dolce, Logene Pierre, Therese

Guerrier, Ducasse Waldez and Marc Auguste never made it to Alachua County and were instead

abandoned at the Miami International Airport by Willie Paul Edouard.

74.   H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude

Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois

Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste,

Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita

Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy

Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne

Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and

Modeline Sejour were transported from Miami to Alachua County, Florida.  Upon their arrival in

Alachua County, these H-2A worker Plaintiffs were assigned to overcrowded housing units on or

near Defendants' farm.   These H-2A worker Plaintiffs were charged between $25 and $40 per

week for these quarters, with these sums either collected by Ceneus or Edouard or directly

withheld from these H-2A worker Plaintiffs' weekly earnings.

75.   H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude

Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois

Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste,

Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita

Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy

Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne

Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and

Modeline Sejour were employed harvesting peas, beans and other crops on the Defendants'

Alachua County operations.   On occasion, several of these Plaintiffs were also employed grading

vegetables in the Defendants' packinghouse.

76.   Throughout the period they employed H-2A worker Plaintiffs Lysner Valcin, Jean

Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir,

Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie

Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine

Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson

Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus,

Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald

Jean, Brunet Martin and Modeline Sejour during the 2009 north Florida  vegetable season, the

-25-

Defendants failed to provide field toilets, handwashing facilities and drinking water as required by federal and state law in the locations in which these H-2A worker Plaintiffs harvested vegetables.

77.  H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour were paid on a piece-rate basis for their work harvesting vegetables on the Defendants' operations.  These H-2A worker Plaintiffs' weekly piece-rate harvesting earnings totaled less than the adverse effect wage rate of $8.82 per hour set out in the various clearance orders under which they were hired and employed.  However, these H-2A worker Plaintiffs were only compensated  for their piece-rate earnings; no effort was made to supplement these piece-rate earnings so as to raise their work week wages to a rate equal to or exceeding the guaranteed contract rate of $8.82 per hour, the rate required by federal regulations governing the H-2A program.

78.  The Defendants breached the terms of the employment contracts of H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys

Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour, the terms of which were set out in the clearance orders and the H-2A regulations incorporated therein, in the following respects:

    a.    The Defendants failed to provide these H-2A worker Plaintiffs with meal arrangements as promised in the clearance orders and as required by the H-2A regulations. A number of housing units in which these H-2A worker Plaintiffs resided lacked cooking facilities and the occupants were provided with a single meal per day, for which they were charged $5;

    b.    The Defendants failed to pay these H-2A worker Plaintiffs the contract wage of $8.82 per hour for their work. This resulted in part because of the Defendants' failure to credit these H-2A worker Plaintiffs with all compensable hours of work, including time they were required to sit idle at the jobsite at the commencement of the day for prolonged periods of time, waiting for the dew to dry on the beans before beginning to pick, or at the end of the workday, waiting for boxes of beans to be weighed and for their picking tokens to be counted. In addition, as set out in Paragraph 77, the Defendants failed to supplement the Plaintiffs' piece-rate wages to raise them to the $8.82 per hour rate set out in the workers' employment contracts. These underpayments also resulted from withholdings made from these H-2A worker Plaintiffs' gross wages for housing and food which either exceeded

-27-

the actual cost of these facilities or were for facilities furnished in violation of

federal and state law;

c.      The Defendants failed to provide housing to these H-2A worker Plaintiffs without

charge and in compliance with applicable OSHA regulations;

d.      The Defendants did not provide for or reimburse inbound transportation and

subsistence expenses as required by the contract and the federal regulations

incorporated therein;

e.      The Defendants failed to maintain payroll records accurately recording the hours

worked by these H-2A worker Plaintiffs and the sums withheld from their wages;

f.       The Defendants failed to provide these H-2A Plaintiffs each pay period with

wage statements showing the hours offered, the hours worked, the gross earnings

and all sums withheld from wages;

g.      The Defendants failed to offer these H-2A worker Plaintiffs at least three-fourths

of the workdays of the contract period and, when this guarantee was not met, the

Defendants failed to pay these H-2A worker Plaintiffs the amount they would

have earned had the guarantee been fulfilled; and

h.      The Defendants failed to provide these H-2A worker Plaintiffs with a copy of the

employment contract.


79.   The Defendants breached the terms of the employment contracts of H-2A worker

Plaintiffs  Paulnise Dolce, Slandley Dolce, Logene Pierre, Therese Guerrier, Ducasse Waldez and

Marc Auguste, the terms of which were set out in the clearance order filed by Edouard and the H-

2A regulations incorporated therein, in the following respects:

    a.     The Defendants did not provide for or reimburse inbound transportation and subsistence expenses as required by the contract and the federal regulations incorporated therein;

    b.     The Defendants failed to offer these H-2A worker Plaintiffs at least three-fourths of the workdays of the contract period and, when this guarantee was not met, the Defendants failed to pay these H-2A worker Plaintiffs the amount they would have earned had the guarantee been fulfilled; and

    c     The Defendants failed to provide these H-2A worker Plaintiffs with a copy of the employment contract.

    80.   As a result of the contractual breaches set out in Paragraphs 78 and 79, the H-2A worker Plaintiffs have suffered monetary and substantial economic damages.

## COUNT IV

### (Migrant and Seasonal Agricultural Worker Protection Act)
### (2008 north Florida vegetable season)

81.  This count sets forth a claim by domestic worker Plaintiffs Delinoir Fanette, Yves

Augustin, Juslaine Cherelus, Dalestin Cherenfant, Sifort Contreker, Pierre Anes Darvilmar,

Marie I. Desruisseau, St. Gelus Dufresne, Marie Almonor Faustin, Devilma Florvil, Zillianne

Joly, Merancia Joseph, Anite Labrousse, Andrelise Mezilus, Decion Nelson, Inocio Andre

Simeon, Pierre Stimable, Epfanie Saintelus Vital and Dukens Zephir ("the 2008 domestic worker

Plaintiffs") for damages, injunctive relief and declaratory relief with respect to the Defendants'

violations of the AWPA and its attendant regulations during the 2008 vegetable season on the

Defendants' operations in and near Lacrosse, Florida.

82.  In or about April, 2008, the Defendants recruited the 2008 domestic worker

Plaintiffs for employment on the Defendants' operations during the 2008 north Florida vegetable

season, extending from approximately May through November, 2008.  This recruitment was

conducted or supervised by Cabioch Bontemps.

83.  Each of the 2008 domestic worker Plaintiffs is permitted to work permanently in the

United States and is a "U.S. Worker" within the meaning of 20 C.F.R. §655.100(b).   The 2008

Plaintiffs performed labor on the Defendants' operations of the sort described in the clearance

order filed by Carline Ceneus as part of her temporary labor certification application and as set

out in Exhibit A.  The terms of the clearance order filed by Ceneus constituted a working

arrangement between the Defendants and the 2008 domestic worker Plaintiffs within the

meaning of the AWPA, 29 U.S.C. §§1822(c).

84.  The Defendants failed to provide the 2008 domestic worker Plaintiffs at the time of their recruitment with a written statement of the terms and conditions of employment in a language in which the workers were fluent, as required by the AWPA, 29 U.S.C. §§1821(a) and (g), and its attendant regulations, 29 C.F.R. §§500.75(b) and 500.78.

85.  At various points in the 2008 north Florida vegetable season, the Defendants employed the 2008 domestic worker Plaintiffs for work planting, cultivating, harvesting, grading and packing vegetable crops on the Defendants' farm near Lacrosse, Florida.   The H-2A workers admitted pursuant to the temporary labor certification application filed by Carline Ceneus also performed these tasks.

86.  Throughout the period of their employment on the Defendants' farm during the 2008 vegetable season, the 2008 domestic worker Plaintiffs were housed in facilities owned or controlled by the Defendants.   At all times relevant to this count, these housing facilities were controlled and provided to the 2008 domestic worker Plaintiffs by the Defendants, within the meaning of the AWPA, 29 U.S.C. §§1821(c) and 1823(a), and its attendant regulations, 29 C.F.R. §§500.75(f) and 500.130(c).

87  In violation of the AWPA, 29 U.S.C. §1823(b)(1), and its attendant regulations, 29 C.F.R. §500.135(a), the Defendants permitted the 2008 domestic worker Plaintiffs to occupy the housing facilities described in Paragraph 86 without these facilities having first been certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards relating to migrant labor housing.

88.  In violation of the AWPA, 29 U.S.C. §1823(a), and its attendant regulations, 29

C.F.R. §500.130, the Defendants failed to ensure that the accommodations provided to the 2008 domestic worker Plaintiffs as described in Paragraph 86 complied with substantive Federal and State safety and health standards applicable to the housing.  Among other things, the facilities were overcrowded, lacked required cooking, refrigeration and food storage equipment, were not equipped with heat and did not include comfortable beds for each occupant.

89.  The Defendants failed to post in a conspicuous place or to present to the 2008 domestic worker Plaintiffs a written statement of the terms and conditions of occupancy at the facilities described in Paragraph 86, as required by the AWPA, 29 U.S.C. §§1821(c) and (g), and its implementing regulations, 29 C.F.R. §§500.75(f) and 500.78.

90.  Throughout the 2008 north Florida vegetable season, the Defendants transported or caused to be transported the 2008 domestic worker Plaintiffs on a daily basis in various vehicles. The Defendants failed to have an insurance policy or liability bond insuring them in the requisite amounts against liability for damage to persons and property arising from the transportation of the 2008 domestic worker Plaintiffs in these vehicles, thereby violating the AWPA, 29 U.S.C. §1841(b)(1)(C), and its attendant regulations, 29 C.F.R. §§500.120 and 500.121.

91.  The Defendants failed to make, keep and preserve records as required by the AWPA, 29 U.S.C. §1821(d)(1), and its attendant regulations, 29 C.F.R. §500.80(a), regarding the work of the 2008 domestic worker Plaintiffs during the 2008 north Florida vegetable season.  Among other things, no records were maintained showing the hours worked by the 2008 dmestic worker Plaintiffs while employed harvesting vegetables on a piece-rate basis.

92.  In violation of the AWPA, 29 U.S.C. §1821(d)(2), and its attendant regulations, 29 C.F.R. §500.80(d), the Defendants failed to provide to the 2008 domestic worker Plaintiffs at

each pay day during the 2008 north Florida vegetable season a written statement containing the data required to be disclosed under the statute and its implementing regulations.  The 2008 domestic worker Plaintiffs either received no wage statements whatsoever or were provided with pay envelopes which failed to show the employer's name and address and the number of hours worked while employed on piece-rate activities.

93.  Throughout the period they employed the 2008 domestic worker Plaintiffs during the 2008 north Florida  vegetable season, the Defendants failed to provide field toilets, handwashing facilities and drinking water as required by federal and state law, thereby violating the AWPA, 29 U.S.C. §1822(c), and its implementing regulations, 29 C.F.R. §500.72.

94.  The 2008 domestic worker Plaintiffs were paid on a piece-rate basis for their work harvesting vegetables on the Defendants' operations during the 2008 north Florida vegetable season.  The 2008 domestic worker Plaintiffs' weekly piece-rate harvesting earnings totaled less than the applicable federal and state minimum wages.  The Defendants only compensated the 2008 domestic worker Plaintiffs for their piece-rate earnings.  The Defendants failed to supplement the 2008 domestic worker Plaintiffs' piece-rate earnings so as to raise their work week wages to a rate equal to or exceeding the applicable state and federal minimum wages and the applicable adverse effect wage rate of $8.82 per hour.

95.  The Defendants failed to properly credit the 2008 domestic worker Plaintiffs with all compensable hours worked.  On occasion, the 2008 domestic worker Plaintiffs were required to sit idle at the jobsite at the commencement of the day for prolonged periods of time, waiting for the dew to dry on the beans before beginning to pick, or at the end of the workday, waiting for boxes of beans to be weighed and for their picking tokens to be counted.  Although this time was

properly compensable under the Fair Labor Standards Act, the Defendants failed to credit the 2008 domestic worker Plaintiffs with this waiting time as part of their respective compensable hours worked.

96.   The Defendants unlawfully withheld charges from the wages of the 2008 domestic worker for the housing accommodations described in Paragraph 86.

97.   The Defendants failed to report to the Social Security Administration the earnings of the 2008 domestic worker Plaintiffs on the Defendants' operations during the 2008 north Florida vegetable harvest.  The Defendants also failed to pay Social Security taxes pursuant to the Federal Insurance Contributions Act with respect to the earnings of the 2008 domestic worker Plaintiffs for labor performed on the Defendants' operations during the 2008 north Florida vegetable harvest.

98.   By their actions described in Paragraphs 94, 95, 96 and 97, the Defendants failed to pay the 2008 domestic worker Plaintiffs their wages when due for work performed on the Defendants' operations during the 2008 vegetable harvest, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81.

99.   The Defendants failed to pay the 2008 domestic worker Plaintiffs the $8.82 per hour rate promised to the H-2A workers and guaranteed to all similarly–employed U.S. workers in the temporary labor certification application filed by Carline Ceneus on behalf of the Defendants.

100.   The Defendants failed to provide the 2008 domestic worker Plaintiffs with rent-free housing, as promised to the H-2A workers and guaranteed to all similarly–employed U.S. workers in the temporary labor certification application filed by Carline Ceneus on behalf of the Defendants.

101.     By the actions and omissions described in Paragraphs 99 and 100, the Defendants violated without justification their working arrangement with the 2008 domestic worker Plaintiffs, thereby violating the AWPA, 29 U.S.C. §1822(c), and its attendant regulations, 29 C.F.R. §500.72.

102.   The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

103.   As a result of the Defendants' violations of the AWPA and its attendant regulations as set forth in this count, the 2008 domestic worker Plaintiffs have suffered damages.

## COUNT V

### (Migrant and Seasonal Agricultural Worker Protection Act)
### (2007 north Florida vegetable season)

104.  This count sets forth a claim by Plaintiffs Juslaine Cherelus, Dalestin Cherenfant,

Sifort Contreker, Pierre Anes Darvilmar, Marie I. Desruisseau, St. Gelus Dufresne, Marie

Almonor Faustin, Devilma Florvil, Merancia Joseph, Zillianne Joly, Rosie Joseph, Anite

Labrousse, Decius Nelson, Addly Petitfrere, Inocio Andre Simeon, Pierre Stimable, Epfanie

Saintelus Vital and Dukens Zephir ("the 2007 Plaintiffs") for damages, injunctive relief and

declaratory relief with respect to the Defendants' violations of the AWPA and its attendant

regulations during the 2007 vegetable season on the Defendants' operations in and near Lacrosse,

Florida.

105.  In or about April, 2007, the Defendants recruited the 2007 Plaintiffs for

employment on the Defendants' operations during the 2007 north Florida vegetable season,

extending from approximately May through November, 2007.  This recruitment was conducted

or supervised by Cabioch Bontemps, a full-time employee of the Defendants.

106.  The Defendants failed to provide the 2007 Plaintiffs at the time of their recruitment

with a written statement of the terms and conditions of employment in a language in which the

workers were fluent, as required by the AWPA, 29 U.S.C. §§1821(a) and (g), and its attendant

regulations, 29 C.F.R. §§500.75(b) and 500.78.

107.  At various points in the 2007 north Florida vegetable season, the Defendants

employed the 2007 Plaintiffs for work planting, cultivating, harvesting, grading and packing

vegetable crops on the Defendants' farm near Lacrosse, Florida.

108.   Throughout the period of their employment on the Defendants' farm during the 2007 north Florida vegetable season, the 2007 Plaintiffs were housed in facilities owned or controlled by the Defendants.   At all times relevant to this count, these housing facilities were controlled and provided to the 2007 Plaintiffs by the Defendants, within the meaning of the AWPA, 29 U.S.C. §§1821(c) and 1823(a), and its attendant regulations, 29 C.F.R. §§500.75(f) and 500.130(c).

109.   In violation of the AWPA, 29 U.S.C. §1823(b)(1), and its attendant regulations, 29 C.F.R. §500.135(a), the Defendants permitted the 2007 Plaintiffs to occupy the housing facilities described in Paragraph 108 without these facilities having first been certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards relating to migrant labor housing.

110.   In violation of the AWPA, 29 U.S.C. §1823(a), and its attendant regulations, 29 C.F.R. §500.130, the Defendants failed to ensure that the accommodations provided to the 2007 Plaintiffs as described in Paragraph 108 complied with substantive Federal and State safety and health standards applicable to the housing.   Among other things, the facilities were overcrowded, lacked required cooking, refrigeration and food storage equipment, were not equipped with heat and did not include comfortable beds for each occupant.

111.   The Defendants failed to post in a conspicuous place or to present to the 2007 Plaintiffs a written statement of the terms and conditions of occupancy at the facilities described in Paragraph 108, as required by the AWPA, 29 U.S.C. §§1821(c) and (g), and its implementing regulations, 29 C.F.R. §§500.75(f) and 500.78.

112.   Throughout the 2007 north Florida vegetable season, the Defendants transported or caused to be transported the 2007 Plaintiffs on a daily basis in various vehicles.  The Defendants failed to have an insurance policy or liability bond insuring them in the requisite amounts against liability for damage to persons and property arising from the transportation of the 2007 Plaintiffs in these vehicles, thereby violating the AWPA, 29 U.S.C. §1841(b)(1)(C), and its attendant regulations, 29 C.F.R. §§500.120 and 500.121.

113.   The Defendants failed to make, keep and preserve records as required by the AWPA, 29 U.S.C. §1821(d)(1), and its attendant regulations, 29 C.F.R. §500.80(a), regarding the work of the 2007 Plaintiffs during the 2007 north Florida vegetable season.   Among other things, no records were maintained showing the hours worked by the 2007 Plaintiffs while employed harvesting vegetables on a piece-rate basis.

114.   In violation of the AWPA, 29 U.S.C. §1821(d)(2), and its attendant regulations, 29 C.F.R. §500.80(d), the Defendants failed to provide to the 2007 Plaintiffs at each pay day during the 2007 north Florida vegetable season a written statement containing the data required to be disclosed under the statute and its implementing regulations.   The 2007 Plaintiffs either received no wage statements whatsoever or were provided with pay envelopes which failed to show the employer's name and address and the number of hours worked.

115.   Throughout the period they employed the 2007 Plaintiffs during the 2007 north Florida  vegetable season, the Defendants failed to provide field toilets, handwashing facilities and drinking water as required by federal and state law, thereby violating the AWPA, 29 U.S.C. §1822(c), and its implementing regulations, 29 C.F.R. §500.72.

116.   The 2007 Plaintiffs were paid on a piece-rate basis for their work harvesting

-38-

vegetables on the Defendants' operations during the 2007 north Florida vegetable season. The

2007 Plaintiffs' weekly piece-rate harvesting earnings totaled less than the applicable federal and

state minimum wages. The Defendants only compensated the 2007 Plaintiffs for their piece-rate

earnings. The Defendants failed to supplement the 2007 Plaintiffs' piece-rate earnings so as to

raise their work week wages to a rate equal to or exceeding the applicable state and federal

minimum wages.

117. The Defendants failed to properly credit the 2007 Plaintiffs with all compensable

hours worked. On occasion, the 2007 Plaintiffs were required to sit idle at the jobsite at the

commencement of the day for prolonged periods of time, waiting for the dew to dry on the beans

before beginning to pick, or at the end of the workday, waiting for boxes of beans to be weighed

and for their picking tokens to be counted. Although this time was properly compensable under

the Fair Labor Standards Act, the Defendants failed to credit the 2007 Plaintiffs with this waiting

time as part of their respective compensable hours worked.

118. The Defendants unlawfully withheld charges from the wages of the 2007 Plaintiffs

for the housing accommodations described in Paragraph 108.

119. The Defendants failed to report to the Social Security Administration the earnings

of the 2007 Plaintiffs on the Defendants' operations during the 2007 north Florida vegetable

harvest. The Defendants also failed to pay Social Security taxes pursuant to the Federal

Insurance Contributions Act with respect to the earnings of the 2007 Plaintiffs for labor

performed on the Defendants' operations during the 2007 north Florida vegetable harvest.

120. By their actions described in Paragraphs 116, 117, 118 and 119, the Defendants

failed to pay the 2007 Plaintiffs their wages when due for work performed on the Defendants'

-39-

operations during the 2007 vegetable harvest, in violation of the AWPA, 29 U.S.C. §1822(a), and its implementing regulations, 29 C.F.R. § 500.81.

121.   The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

122.   As a result of the Defendants' violations of the AWPA and its attendant regulations as set forth in this count, the 2007 Plaintiffs have suffered damages.

## COUNT VI

### (Fair Labor Standards Act)
### (2007, 2008, 2009 and 2010 north Florida vegetable season)

123.    This count sets forth a claim for declaratory relief and damages by the domestic

worker Plaintiffs and H-2A Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour,

Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois

Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste,

Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita

Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy

Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne

Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and

Modeline Sejour for the Defendants' violations of the minimum wage provisions of the FLSA

during the 2007, 2008, 2009 and 2010 north Florida vegetable seasons.

124.    The Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C.

§206(a), by failing to pay the Plaintiffs at least:

- $7.25 for every compensable hour of labor he or she performed on after July 24, 2009;

- $6.55 for every compensable hour of labor he or she performed from July 24, 2008
  through July 23, 2009;

- $5.85 for every compensable hour of labor he or she performed from July 24, 2007
  through July 23, 2008;

- $5.15 for every compensable hour of labor he or she performed from April 1 through July

23, 2007.

125.   The violations of the FLSA as set out in Paragraph 124 resulted in part from the Defendants' failure to supplement the Plaintiffs' piece-rate earnings so as to raise their individual pay period wages to a rate equal to or exceeding the minimum wage and failure to credit the Plaintiffs with all compensable hours worked.

126.   The violations of the FLSA as set out in Paragraph 124 resulted in part from the Defendants's unlawful withholding from the Plaintiffs' wages of charges for housing facilities furnished in violation of law or which exceeded the reasonable cost of furnishing these facilities.

127.   The violations of the FLSA as set out in Paragraph 124 resulted in part from the Defendants' failure to reimburse H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour in their first week of employment for the expenses they incurred securing H-2A visas and traveling form Haiti to the Defendants' jobsite.

128.   With respect to work performed in the Defendants' packing house during the 2010 harvest, the violations of the FLSA described in Paragraph 124 resulted in part from the Defendants' pay rate of $7.00 per hour, less than the applicable minimum wage under the Fair Labor Standards Act.

129.   The violations of the FLSA set forth in Paragraph 124 were willful, within the meaning of the Portal-to-Portal Act.  The Defendants disregarded the very possibility that they were violating the FLSA.  The Defendants were aware of the FLSA's requirements but took no affirmative action to comply with these requirements.

130.   As a consequence of the Defendants' violations of the FLSA as set out in this count, the domestic worker Plaintiffs and H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour are entitled to recover their unpaid minimum wages, plus an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §216(b).

## COUNT VII

### (Minimum Wage Provisions of the Florida Constitution)
### (2007, 2008, 2009 and 2010 north Florida vegetable season)

131.    This count sets forth a claim for declaratory relief and damages by the domestic worker Plaintiffs and H-2A Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour for the Defendants' violations of the minimum wage provisions of the FLSA during the 2007, 2008, 2009 and 2010 north Florida vegetable seasons.

132.    The Defendants violated the minimum wage provisions of the Florida Constitution by failing to pay the Plaintiffs at least:

- $7.25 for every compensable hour of labor he or she performed in 2010;

- $7.21 for every compensable hour of labor he or she performed in 2009;

- $6.79 for every compensable hour of labor he or she performed in 2008;

- $6.67 for every compensable hour of labor he or she performed in 2007.

133.    The violations of the minimum wage provisions of the Florida Constitution as set out in Paragraph 132 resulted in part from the Defendants' failure to supplement the Plaintiffs' piece-rate earnings so as to raise their individual pay period wages to a rate equal to or exceeding

the minimum wage and failure to credit the Plaintiffs with all compensable hours worked.

134.   The violations of the  minimum wage provisions of the Florida Constitution as set out in Paragraph 132  resulted in part from the Defendants's unlawful withholding from the Plaintiffs' wages of charges for housing facilities furnished in violation of law or which exceeded the reasonable cost of furnishing these facilities.

134.   The violations of the minimum wage provisions of the Florida Constitution as set out in Paragraph 132 resulted in part from the Defendants' failure to reimburse H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour in their first week of employment for the expenses they incurred securing H-2A visas and traveling form Haiti to the Defendants' jobsite.

135.   As a result of the Defendants' violations of the minimum wage provisions of the Florida Constitution as described above, each of the Plaintiffs is entitled to recover the amount of his or her unpaid minimum wages, and an equal amount as liquidated damages, pursuant to Article X, § 24 (e) of the Florida Constitution.

-45-

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court enter an order:

a.    Declaring that the Defendants violated the AWPA and its attendant regulations with respect to its employment of the Plaintiffs during the 2007, 2008, 2009 and 2010 north Florida vegetable harvests as set out in Counts I, II, IV and V;

b.    Declaring that the Defendants violated the FLSA, as set forth in Count VI;

c.    Granting judgment in favor of the 2010 Plaintiffs and against the Defendants, jointly and severally, on the claims under the Migrant and Seasonal Agricultural Worker Protection Act set forth in Count I, and awarding each of the 2010 Plaintiffs his or her actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

d.    Granting judgment in favor of the 2009 Plaintiffs and against the Defendants, jointly and severally, on the claims under the Migrant and Seasonal Agricultural Worker Protection Act set forth in Count II, and awarding each of the 2009 Plaintiffs his or her actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

e.    Granting judgment in favor of the H-2A worker Plaintiffs and against the Defendants, jointly and severally, on the contract claims set forth in Count III and awarding each of the H-2A worker Plaintiffs his or her actual and compensatory damages;

f.    Granting judgment in favor of the 2008 domestic worker Plaintiffs and against the Defendants, jointly and severally, on the claims under the Migrant and Seasonal

Agricultural Worker Protection Act set forth in Count IV, and awarding each of the 2008 domestic worker Plaintiffs his or her actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

g. Granting judgment in favor of the 2007 Plaintiffs and against the Defendants, jointly and severally, on the claims under the Migrant and Seasonal Agricultural Worker Protection Act set forth in Count V, and awarding each of the 2007 Plaintiffs his or her actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA set forth in that count;

h. Granting judgment in favor  the domestic worker Plaintiffs and H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil, Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour on their FLSA claims as set forth in Count VI, and awarding each of these individuals the amount of his or her unpaid minimum wages and an equal amount as liquidated damages;

i. Granting judgment in favor of the domestic worker Plaintiffs and H-2A worker Plaintiffs Lysner Valcin, Jean Robert Sejour, Richerson Sejour, Claude Sejour, Max Etienne, Emmanuel Mondesir, Elin Medir, Rodelin Dempaire, Jean Francois Cajour, Edil Exanvil,

Arold Pierre, Jodany Sejour, Marie Claudette Milien, Juslaine Auguste, Odette Antoine, Gladys Geffrard, Manouche Sejour, Derdine Riodin, Jocelyne Pierre, Plenita Laurant, Melianna Lazarre, Romeldine Pierre, Wislain Wilson Orelus, Judes St. Hilaire, Jimmy Jean Louis, Gesner Elta Duverney, St. Juste Saintamand Orelus, Mikelson Lacour, Lalanne Guerrier, Negus Almonor, Olibrice Orelus, Jummy Moncoeur, Ronald Jean, Brunet Martin and Modeline Sejour and against the Defendants, jointly and severally, on the claims under the minimum wage provisions of the Florida Constitution as set forth in Count VII and awarding each of these individuals the amount of his or her unpaid minimum wages, along with an equal amount as liquidated damages;

j.    Enjoining the Defendants from further failure to comply with the provisions of the Migrant and Seasonal Agricultural Worker Protection Act and its implementing regulations;

k.    Awarding the Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. §216, §448.08, Fla. Stat. And Article X, § 24 of the Florida Constitution;

l.    Awarding the Plaintiffs the costs of this action; and

m.   Granting such further relief as this Court deems just and appropriate.

## JURY DEMAND

The Plaintiffs demand a trial by jury of all triable issues.

Respectfully submitted,




*/s/ Amanda Caldwell*
Amanda Caldwell
Florida Bar Number 0064237
FLORIDA RURAL LEGAL SERVICES, INC.
3210 Cleveland Avenue, Suite 101
Post Office Box 219
Fort Myers, Florida   33902
Telephone:      (239) 334-4554, extension 4112
Facsimile:      (239) 334-3042


Attorney for H-2A worker Plaintiffs




*/s/ Ingrid Francoeur*
Ingrid Francoeur
Florida Bar Number 0037481
FLORIDA RURAL LEGAL SERVICES, INC.
3210 Cleveland Avenue, Suite 101
Post Office Box 219
Fort Myers, Florida   33902
Telephone:      (239) 334-4554, extension 4120
Facsimile:      (239) 334-3042


Attorney for H-2A worker Plaintiffs

_/s/ Gregory S. Schell_
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
Florida Legal Services, Inc.
508 Lucerne Avenue
Lake Worth, Florida    33460-3819
Telephone:      (561) 582-3921
Facsimile:      (561) 582-4884

_____Attorney for domestic worker Plaintiffs